HAWTHORNE VALLEY CO. V. CLEVELAND REAL ESTATE
INVESTMENT CO.

Decided March 25, 1931.

*Krueger & Pelton,* for plaintiff.
*Davies & Eshner* and *Niman & Buss,* for defendant:

RUHL, J.

There seems to be but few facts in issue in this cause as practically all of the facts have been stipulated and appear in the record as stipulations. The only testimony being taken from witnesses·was that regarding the plain-

tiff's assumption of the mortgage. The court has examined the stipulations and given careful consideration to the question of the assumption of the mortgage by the Hawthorne Valley Company and has carefully read the briefs of counsel and examined the exhibits and from the same the court finds that on August 13, 1927, Heaton Pennington, Jr., as Trustee for a certain syndicate of persons who called themselves the Loch Lomond Syndicate, were the owners of certain real estate now occupied by and surrounding the Hawthorne Valley golf course, a part of which lands were owned by said syndicate and held in the name of Heaton Pennington, Jr., Trustee, in fee and the remaining portion was held on 99-year lease, the leases being taken in the name of Heaton Pennington, Jr., Trustee. Said lands owned in fee and on leasehold by said syndicate and held in the name of Heaton Pennington, Jr., as Trustee were encumbered with various first mortgages on different parcels, which said first mortgages are before the court in this action by cross petition of the various first mortgagees, but concerning which first mortgages there is no issue before the court, the sole issue being between the Hawthorne Valley Company and the Cleveland Real Estate Investment Company.

On August 13, 1927, Heaton Pennington, Jr., as such Trustee for said syndicate executed and delivered to the Cleveland Real Estate Investment Company his promissory note for $45,000. This promissory note was secured by two mortgages, one upon the fee to that portion of the real estate held in fee by Heaton Pennington, Jr., Trustee, which is described in the plaintiff's petition and the other mortgage securing the same note being a lien upon that portion of the property held by Heaton Pennington, Trustee, under 99-year lease. Contemporaneously with the execution and delivery of the note and mortgages referred to, Heaton Pennington, Jr., as such Trustee executed a disbursement agreement which is in evidence, in which provision was made for the payment of a bonus of $6,750, or fifteen per cent. of the face amount of the note and for the payment of the recording fees of the mortgages, abstract expense, appraisal fees and reasonable at-

torneys' fees for the preparation of the papers in connection with the loan. It seems that there is no contest as to these charges and expenses and the reasonableness of the attorneys fees in this cause, but that the sole issue is concerning the bonus or discount paid upon said loan and other bonuses and fees charged since the inception of said loan. It further appears that said loan was to be repayable two years from date in monthly installments of $900 per month and that shortly after the execution of said loan Heaton Pennington, Jr., was unable to meet said monthly installments and did agree to pay in lieu of said monthly installments an additional bonus or discount of one per cent. per month on each monthly installment remaining unpaid from its due date to the date that it should be paid and it is to this additional bonus that the plaintiff excepts and complains of herein. The court further finds that the Loch Lomond Syndicate for whom Heaton Pennington, Jr., was trustee was composed of a group of individuals, some twenty-five or more in number, who were beneficially interested in said real estate and golf project to the extent of their respective contributions in the real estate and leasehold involved in this action and that Heaton Pennington, Jr., held the title thereto as trustee for their benefit and his own benefit.

As the result of some action taken by the members of the Loch Lomond Syndicate, the reason for which is not important in this action, Heaton Pennington, Jr., by warranty deed dated May 18, 1929, conveyed the premises involved to the Loch Lomond Company, a corporation which apparently had been incorporated to act as a selling agent for the benefit of the syndicate and stock in that company was issued to the syndicate members in proportion to their respective syndicate holdings and the trust between the syndicate and the trustee was dissolved or cancelled and the trust terminated.

Thereafter and approximately one month later, the Loch Lomond Company by warranty deed conveyed said premises to the Hawthorne Valley Company, a corporation, and the plaintiff in this action. In the deed from Heaton Pen-

nington, Jr. Trustee, to the Loch Lomond Company there was an express assumption of the first mortgages then existing as liens against the property, but no mention was made of the mortgage of the Cleveland Real Estate Investment Company. In the deed from the Loch Lomond Company to the Hawthorne Valley Company no mention was made of any mortgages whatsoever against said premises, although both of said deeds were warranty deeds in form.

The Cleveland Real Estate Investment Company actually disbursed in cash to the syndicate or its representatives amounts aggregating the sum alleged in the petition, approximately $34,000, and it paid to itself the bonus of $6,750, and expended certain other sums as alleged in the petition for expenses and charges and the balance of said loan was applied from time to time in payment of the monthly installments of $900 which the note required to be paid on principal and interest beginning October 1, 1927, and which the maker of the note and mortgage neglected to pay. The Hawthorne Valley Company, the plaintiff herein, was a corporation organized for the purpose of acquiring the property from the Loch Lomond Company, who had in turn acquired it from Heaton Pennington, Jr., Trustee, upon the termination of the syndicate agreement between the syndicate members and Heaton Pennington, Jr., Trustee. It appears that the Hawthorne Valley Company was not only composed of the original syndicate members but that there were stockholders in the Hawthorne Valley Company who had never been syndicate members or holders of stock in the Loch Lomond Company and that the Hawthorne Valley Company caused to be issued an "A" or preferred stock and a "B" or common stock. Upon organization they desired to interest new capital in the project and extended an offer to all of the original syndicate members and holders of the Loch Lomond Company stock to invest new and additional money in the Hawthorne Valley Company. For such new and additional money the investor would receive the "A" or preferred stock and for his original investment he would receive the "B" or common stock in certain propor-

tions. Some of the original investors who were in the syndicate invested additional capital for which they received "A" or preferred stock and for their original interest received common stock and the original investors who did not invest any new or additional moneys were given the "B" or common stock and the new investors who had not been syndicate holders in the original syndicate nor holders of stock in the Loch Lomond Company received "A" or preferred stock, so that the Hawthorne Valley Company at the time or immediately following its organization was a new corporation composed chiefly of the original syndicate members, but having as stockholders three or four persons who had made investments who had not been interested in the project prior to the organization of the Hawthorne Valley Company. The facts thus far do not appear to be in issue but seem to be from the stipulations, exhibits and pleadings practically admitted by both the plaintiff and the defendant.

It further appears that subsequent to the conveyance of said properties to the plaintiff that the plaintiff through its proper officers made repeated promises to pay the Cleveland Real Estate Investment Company the balance due as claimed by the Cleveland Real Estate Investment Company upon said loan and it further appears that from approximately the middle of the year 1929 to the time of the filing of this action that the president of the Cleveland Real Estate Investment Company and the secretary of the Hawthorne Valley Company had held conferences concerning the payment of the balance and that no question of usury had been raised until sometime after the loan became due and had in the meantime paid the interest upon the loan and had in correspondence referred to the Cleveland Real Estate Investment Company's mortgage as their loan, as is evidenced by a letter dated October 8, 1928, in which is found this language: "This will acknowledge receipt of your letter of October 5th setting up the terms on which you propose to waive for us the monthly payments *on our loan.*" Again in a letter from the Hawthorne Valley Company dated October 1, 1929, which is signed by I. R. Martin, treasurer of the Haw-

thorne Valley Company, the following language is found: "Enclosed you will find check for $5,000 to apply on the Loch Lomond *Company* mortgage. I am disappointed that I am unable to give you the $10,000 on this date as I had anticipated. Mr. House, who was to pay in $5,000, left the city for a bankers' convention. He said he would take care of it the first of this month. Upon his return to the city, which will be the latter part of the week, I feel sure that he will do same." Following in the same letter appears: "The statement I asked for covering in full the principal and interest payments *on our mortgage* as yet has not been received." Again in a letter dated October 15, 1929, from the Hawthorne Valley Company signed by I. R. Martin, treasurer of the Hawthorne Valley Company, is found this language: "Enclosed herewith check for $5,-600. This is to apply on *our* account."

There can be no question but what under the law of Ohio a mortgage may be assumed by oral agreement or by the acts of the parties and one of the first questions to be determined by this court is whether or not the Hawthorne Valley Company by its treatment of this mortgage did actually assume the payment of the loan, even though the deed of conveyance covering said lands to the Hawthorne Valley Company is silent. It is the opinion of this court that the payments made on this mortgage by the Hawthorne Valley Company, the evidence relative to the conferences had concerning it, the language in the various letters above referred to and all of the facts and circumstances surrounding the loan and the actions of the Hawthorne Valley Company in regard thereto lead to the inevitable conclusion that the Hawthorne Valley Company did assume the payment of said loan and did as a matter of fact pay a considerable portion of said loan and that when the Hawthorne Valley Company acquired the title to the real estate conveyed to it by the Loch Lomond Company, it, in view of its later actions and treatment of the loan, became charged with the responsibility of seeing to the discharge of the mortgage against the premises conveyed. This court further finds that it having become responsible for the discharge of the mort-

gage against the premises conveyed that the responsibility is a corporate obligation of such a character that the corporation in order to avoid all or any part of this responsibility cannot assert usury which occurred in the original transaction.

The plaintiff contends that Section 8623-78 G. C. has no bearing on the case at bar and it seems to be contended by them that the section does not apply because the note and mortgage were in their inception the obligation of Heaton Pennington, Jr., Trustee. In this regard the court finds that Section 8623-78 as originally enacted reads as follows: "'The limitations of Section 8303 of the General Code shall not apply to any such borrowing, maturing and payable one year or more after the date thereof and no corporation wherever organized nor anyone in its behalf shall interpose the defense or make the claim of usury in any suit or proceed upon or with reference to any such corporate borrowing." This section was later amended by substituting the expression "corporate obligation" for "corporate borrowing" and said Section now reads: "The limitations of Section 8303 of the General Code shall not apply to any corporate *obligation* for the payment of money maturing or payable in whole or in part one year or more after the date thereof and no corporation wherever organized nor anyone in its behalf shall interpose the defense or make the claim of usury in any suit, action or proceeding upon or with reference to any such *obligation*." It seems that the legislature by the substitution of *corporate obligation* for *corporate borrowing* intended to make the statute much broader and more comprehensive and one fitted to include all kinds of corporate obligations, whether originally created or assumed in the course of the corporation's dealings. It is the opinion of this court that the obligation of the Hawthorne Valley Company to the Cleveland Real Estate Investment Company is such a corporate obligation as to be included under the aforementioned statute and hence this court holds that the Hawthorne Valley Company is barred from interposing the defense or make the claim of usury in this action.

This court having found that the evidence warrants the

conclusion that said mortgage was assumed and having found that it is such a corporate obligation as was intended to fall within the purview of Section 8623-78 of the General Code of Ohio will now pass to the remaining issue in this case.

The plaintiff maintains that although it did not as a corporation pay the usury existing in this loan that nevertheless it, by reason of the stockholders being in general the same as the syndicate holders, may plead and obtain for itself the benefits of the usury paid by its predecessor in title, Heaton Pennington, Jr. The defendant maintains that the plaintiff stands in the position of a purchaser of mortgaged premises who has taken title thereto subject to the mortgage and it cannot be heard to raise the question of usury. The law is undoubtedly as laid down in *Union Bank v. Bell*, 14 Ohio State, 200, as follows: "It is true that the assignee of an equity of redemption cannot interpose the defense of usury against the mortgagee; because, having purchased the equity of redemption he is presumed to have purchased subject to the mortgage and by his contract with the mortgagor to have assumed to discharge it, that being a contract which the mortgagor has a right to make, for he might waive the usury; and under this presumption when the purchaser of a mere equity of redemption had paid its price and also discharged the mortgage he has paid no more than the agreed price and the value of the land, which includes both the amount represented by the mortgage and the price of the equity of redemption." It seems to this court when Heaton Pennington, Jr., Trustee, conveyed to the Loch Lomond Company the land in question and the Loch Lomond Company issued to the syndicate members stock representing their contributions to the syndicate it must be presumed that this stock, while not issued upon any specific valuation of the property, nevertheless, in fact did represent merely equity which the syndicate members in the real estate conveyed. After the transfer to the corporation their equity was represented by the stock issued to them and the corporation itself considered as a separate entity held the premises subject to the mortgage just as much as though there had

been language in the deed making the conveyance subject to such mortgage. In *Cramer* v. *Lepper,* 26 Ohio State, 59, the court said: "Where one purchases land subject to a mortgage lien and as part of the consideration agrees to pay the mortgage debt he cannot defend against the mortgage on the ground of usury." In *Jones* v. *Insurance Company,* 40 Ohio State, 583, the court held under a like set of circumstances that the defense of usury was not available to the purchaser of lands subject to a mortgage. In *Loomis* v. *Eaton,* 32 Conn., 550, it is held that the defense of usury is a mere personal defense of which no other party than the person paying usury is a mere personal defense of which no other party than the person paying usury can take advantage. It is the opinion of this court that the Hawthorne Valley Company was an entirely new and separate entity and that although it did not acquire the property upon any particular valuation basis it nevertheless did acquire the property from the Loch Lomond Company and as consideration for the equity in said premises did issue its stock to the holders of stock in the Loch Lomond Company and furthermore the evidence discloses that the personnel of the Hawthorne Valley Company was new and different from the prior owning company, the Loch Lomond Company, and the syndicate, and that the Hawthorne Valley Company upon its acquisition of the equity of redemption was in the position that it could not plead usury paid by a predecessor in title. The fact that stock was issued for the transfer of the real estate does not in any way modify the principle to be applied. It must be presumed that the equity of redemption of the premises was equal to and represented by the stock issued and it must further be presumed that since each corporation merely acquired the equity of redemption in the premises with full knowledge of the existing mortgage and all of the terms and conditions thereof it took said premises subject thereto and that the principle of law that the claim or defense of usury is personal to the original debtor applies with full force to the Hawthorne Valley Company and prevents it from asserting such claim or making such defense.

Therefore, this court finds in favor of the defendant Cleveland Real Estate Investment Company and against the plaintiff, the Hawthorne Valley Company, and orders the petition be dismissed at the costs of the plaintiff.